## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 20 2016, 5:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Kennedy Butler,

*Appellant-Petitioner*,

v.

State of Indiana,

*Appellee-Respondent*.

December 20, 2016

Court of Appeals Case No.
82A01-1512-PC-2269

Appeal from the Vanderburgh
Circuit Court

The Honorable Kelli E. Fink,
Magistrate

Trial Court Cause No.
82C01-1504-PC-2156

**Brown, Judge.**

Kennedy Butler appeals the denial of his petition for post-conviction relief. Butler raises one issue which we revise and restate as whether he was denied the effective assistance of trial counsel. We affirm.

## Facts and Procedural History

The relevant facts as discussed in Butler's direct appeal follow:

> E.D. is a twenty-eight-year-old woman with an I.Q. between fifty and fifty-eight. She was diagnosed with mild to moderate mental retardation in preschool, was taught functional life skills in her school's special education program, and reads below a second grade level. She works at Long John Silver's clearing tables, taking out the trash, filling the condiments stand, and taking orders to the tables. Butler also worked at Long John Silver's and lived a few houses down the street from E.D., who lived with her parents.
>
> On July 11, 2008, E.D. returned home from work and ate lunch in her backyard. Butler stopped to talk to E.D., who invited Butler inside her home to look at her doll collection, which was in her bedroom. Butler told E.D. to take off her clothes and lie face down on her bed. Butler then "put his privates in her behind and made it hurt and bleed," and E.D. told Butler that it was "bad" and she tried to kick him. Tr. p. 627. E.D. told Butler that she did not want to have sex with him, saying, "[g]o away, get up," and "[g]et off me," but Butler did not comply. *Id.* at 291. Eventually, E.D.'s father returned home, Butler left, and E.D. later told her mother what had happened. E.D. was taken to the hospital, where a doctor and nurse performed an examination that revealed a vaginal abrasion and tear that had caused E.D. to bleed.

*Butler v. State*, No. 82A05-0908-CR-481, slip op. at 2-3 (Ind. Ct. App. June 4, 2010), *trans. denied*.

[3] On July 25, 2008, the State charged Butler with rape and criminal deviate conduct as class B felonies. *Id.* at 3. On March 4, 2009, the State added an habitual offender enhancement. *Id.*

[4] At the jury trial, Butler's counsel submitted the following proposed instruction:

> In order to prove the defendant guilty as charged in Counts 1 and 2 the State must prove beyond a reasonable doubt that Kennedy Butler knew that [E.D.] was so mentally disabled or deficient that she could not consent to either sexual intercourse or deviate conduct. The defendant has no burden to disprove this element and the burden of proof beyond a reasonable doubt is with the State at all times.

Trial Transcript at 855. The court refused that instruction based on the belief that it was covered in other instructions. The trial court instructed the jury in part that "[b]efore you may convict [Butler], the State must have proved each of the following beyond a reasonable doubt . . . [E.D.] was so mentally disabled or deficient that consent to sexual intercourse could not be given." *Id.* at 832. During closing argument, Butler's trial counsel argued that E.D. was competent.

[5] The jury found Butler guilty of rape as a class B felony and not guilty of criminal deviate conduct as a class B felony. *Butler*, slip op. at 3. Butler later admitted to being an habitual offender. *Id.* The court sentenced Butler to

fifteen years for the rape conviction and enhanced the sentence by twenty-five years for being an habitual offender for an aggregate sentence of forty years. *Id.*

[6] On direct appeal, Butler argued that the evidence was insufficient to support his conviction for rape because the State failed to establish that E.D. was so mentally disabled that she was unable to consent and, even if she was unable of consenting, that he was aware of that fact. *Id.* at 4. This court held that "[c]apacity to consent 'presupposes an intelligence capable of understanding the act [of sexual intercourse], its nature, and possible consequences.'" *Id.* (quoting *Stafford v. State*, 455 N.E.2d 402, 406 (Ind. Ct. App. 1983)). The record revealed that E.D. had an I.Q. of fifty to fifty-eight, which is considered mild to moderate mental retardation, that she reads below a second grade level, has a childlike vocabulary, and lived with her parents. *Id.* at 4-5. We observed that E.D. was able to work outside the home, but her employment was limited to clearing tables, taking out the trash, filling the condiments stand, and taking food out to the tables. *Id.* at 5. We held that the evidence was sufficient to support the State's contention that E.D. was mentally disabled to an extent that she was incapable of understanding the act of sexual intercourse, its nature, and possible consequences. *Id.* We also held that it was reasonable for the jury to infer that Butler was aware of E.D.'s significant mental disability and that Butler's arguments to the contrary were a request to reweigh the evidence and assess witness credibility, which we may not do. *Id.* at 6.

[7] On December 6, 2010, Butler filed a *pro se* petition for post-conviction relief. On April 29, 2015, Butler, by counsel, filed an amended petition for post-

conviction relief alleging in part that his trial counsel was ineffective for failing to instruct the jury regarding when an adult with a disability has the capacity to consent to sexual intercourse.

[8] On September 18, 2015, the post-conviction court held a hearing. Butler's trial counsel testified that he did not recall tendering a jury instruction regarding a victim's competency to consent. When asked if he did not do so for any strategic purpose, trial counsel answered: "I don't know if I would stay [sic] [s]trategic purpose no, my understanding of the law at the time was that the alleged victim was not capable of legally consenting so based upon my research at the time I didn't see a need to tender that instruction." Post-Conviction Transcript at 8-9. On cross-examination, trial counsel testified that the case was seven years ago and he did not exactly remember the defense. On redirect examination, Butler's post-conviction counsel referred to a case adopting a standard that said the capacity to consent "presupposes an intelligence capable of understanding the act as nature and possible consequences" and asked if trial counsel relied on that case. Trial counsel stated that he would not have relied on that case because he did not believe that there was any evidence to support that E.D. was operating at a functional level. *Id.* at 12.

[9] On December 4, 2015, the court denied Butler's petition. In part, the court's order states:

**<u>FINDINGS OF FACT</u>**

* * * * *

13. . . . [Butler's trial counsel] testified that neither he nor [co-counsel] tendered a jury instruction regarding the victim's ability to consent to sexual activity although they did research the issue prior to trial. Based upon their research and the evidence, including a psychological evaluation of the victim, [trial counsel] believed that the victim was not functioning even close to a me[n]tal maturity level at which she would have had the capacity to consent to sexual activity at the time of the offense. Therefore, [trial counsel] did not see a need to submit a proposed jury instruction regarding a disabled person's ability to consent to sexual activity.

\* \* \* \* \*

## CONCLUSIONS OF LAW

\* \* \* \* \*

7. Though [trial counsel] did not characterize his decision as part of any strategy, his decision not to request a jury instruction regarding victim's capacity was a reasonable strategic decision. His testimony indicated that there was no evidence whatsoever that the disabled victim in this case had the capacity to make decisions regarding sexual activity. In fact, the evidence regarding this fact conflicted with a defense of consent. It is well-established the ineffective assistance of counsel claims cannot success [sic] based upon counsel's strategic decisions, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. Autr[e]y v. State, 700 N.E.2d 1140, 1141 (Ind. 1998). The Court, therefore, does not find that [trial counsel's] representation fell below the objective standard of reasonableness.

8. Moreover, [Butler] has failed to present any evidence that he was prejudiced by his attorney's failure to submit the proposed

instruction regarding capacity to consent. To the contrary, the testimony of [trial counsel] seems to indicate that had such a jury instruction been given, the jury would have had nothing but evidence that the victim did not have the capacity to consent to sexual activity at the time of the offense, thereby undermining the defense's position. Consequently, without any evidence of prejudice, the Court cannot find that [Butler] received ineffective assistance of counsel as to his first allegation.

Appellant's Appendix at 185-190.

## *Discussion*

[10] Before discussing Butler's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no

deference to conclusions of law.  *Id.*  The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses.  *Id.*

[11]  The issue is whether Butler was denied the effective assistance of trial counsel. He argues that his trial counsel's failure to tender a jury instruction on the standard regarding the ability of an individual with diminished mental capacity to consent, left the jury without guidance on the only disputed element of the crime.  He cites *Stafford v. State*, 455 N.E.2d 402 (Ind. Ct. App. 1983), for the idea that the court adopted a standard of consent for a mentally incapacitated individual.  Butler does not appear to specifically assert what instruction his trial counsel should have tendered, but argues that "[t]he standard, as adopted in Indiana, is whether or not the victim is *capable of* this type of understanding – not whether or not the victim *has* such an understanding at the time of the act." Appellant's Brief at 11.  He points to the following trial testimony of Dr. Rebecca Luzio during direct examination:

> Q  Okay.  During your evaluation, did you, knowing what the allegations were in this case, did you discuss at all with [E.D.] about the consequences of sexual activity?
>
> A  I didn't.
>
> Q  Do you have an opinion as to whether she understood . . . would understand this?
>
> A  Uh, I think she might now, she's probably been told, I'm not sure.  But I think . . . I did not get that sense at that time.

Trial Transcript at 438.  He also points to the testimony of E.D.'s mother in which she stated that she had talked with E.D. about sex, that it was not "real detailed," that it is "where babies come from and mommies and daddies are married and they have children, it's something that happens when you're married," and "that was a way for her . . . to understand it." *Id.* at 356.  Butler points out that the jury asked E.D.'s mother if she explained the act of sexual intercourse to E.D., and Mother answered "as far as the actual act, no I . . . I don't think I've ever explained the actual act to her, just the concept." *Id.* at 404-405.  He asserts that given the testimony of Dr. Luzio that E.D. might now understand and the testimony of E.D.'s mother, it is possible that the jury would have found that E.D. had the ability to understand sexual activity, which is what is required by *Stafford*.

[12]  The State argues that Butler cannot show that the trial court would have been compelled to give an instruction based upon *Stafford* and points out that the *Stafford* court's interpretation was part of a sufficiency analysis.  The State contends that Butler's trial counsel knew that the trial court likely would have rejected such an instruction because it rejected a similar instruction that he proposed.  It asserts that Butler cannot demonstrate that an instruction based upon *Stafford* would have made a difference and points to this court's holding that the evidence was sufficient.  The State also points to the record and asserts that the jury would have convicted Butler even with an instruction based upon *Stafford*.

[13] Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). "[L]ogic dictates that 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Hilliard v. State*, 609 N.E.2d 1167, 1169-1170 (Ind. Ct. App. 1993) (quoting *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069)). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[14] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73

(Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

[15] At the time of the offense, Ind. Code § 35-42-4-1(a)(3) provided: "Except as provided in subsection (b), a person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when. . . the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given . . . commits rape, a Class B felony."[1]

[16] In *Stafford*, we addressed the defendant's argument that the evidence was insufficient to support his conviction of rape because the State failed to prove that the victim was incapable of giving consent. 455 N.E.2d at 405. The court examined cases from Illinois and held that "[a]dopting the standard that capacity to consent presupposes an intelligence capable of understanding the act, its nature, and possible consequences and coupling it with our standard of

---

[1] Subsequently amended by Pub. L. No. 158-2013, § 437 (eff. July 1, 2014); Pub. L. No. 214-2013, § 36 (eff. July 1, 2014); Pub. L. No. 168-2014, § 67 (eff. July 1, 2014).

review, there is sufficient evidence" that the victim was incapable of giving consent to sexual intercourse. *Id.* at 406.

[17] To the extent Butler relies upon *Stafford*, we note that the Indiana Supreme Court has held that "the 'mere fact that certain language or expression [is] used in the opinions of this Court to reach its final conclusion does not make it proper language for instructions to a jury.'" *Keller v. State*, 47 N.E.3d 1205, 1209 (Ind. 2016) (quoting *Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003)), *reh'g denied*. The Court also held that "[a]ppellate review of the sufficiency of the evidence . . . will 'rarely, if ever,' be an appropriate basis for a jury instruction, because the determination is fundamentally different." *Id.* (quoting *Garfield v. State*, 74 Ind. 60, 64 (1881)).

[18] We also observe that Butler's trial counsel testified that his "understanding of the law at the time was that the alleged victim was not capable of legally consenting so based upon my research at the time I didn't see a need to tender that instruction." Post-Conviction Transcript at 8-9. Further, his trial counsel argued that E.D. was competent during closing argument. Specifically, he stated that "this is a consent case," pointed out that E.D. rides a city bus five days a week by herself, holds a job, and goes to work five days a week. Trial Transcript at 783. He pointed to the testimony of E.D.'s father that E.D. would understand sexual conduct. Trial counsel asserted that E.D. was competent and was able to testify, understand the nature of the oath, and think for herself. Trial counsel also tendered a jury instruction which stated in part: "In order to prove the defendant guilty as charged in Counts 1 and 2 the State must prove

beyond a reasonable doubt that Kennedy Butler knew that [E.D.] was so mentally disabled or deficient that she could not consent to either sexual intercourse or deviate conduct." *Id.* at 855.

[19]     The court refused that instruction based on the belief that "it was covered by the elements that are covered in Instruction No. 2 and No. 3, and also the definitions of intentionally and knowingly in Court's Instruction No. 4 particularly the last sentence in Court's Instruction No. 4." *Id.* at 796-797. Preliminary Instruction No. 3 informed the jury:

> In Count I, the statute defining the offense of Rape, a Class B felony, which was in force at the time of the offense charged, reads in part as follows: A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given commits Rape, a Class B felony.

*Id.* at 815. Final Instruction No. 2 also informed the jury of the elements of the offense and stated:

> Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant, Kennedy Butler
>
> 2. knowingly or intentionally
>
> 3. had sexual intercourse with [E.D.] when

4. [E.D.] was so mentally disabled or deficient that consent to sexual intercourse could not be given.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find Defendant not guilty of Rape, a Class B felony, as charged in Count 1.

*Id.* at 832.

[20] Under the circumstances, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court or that Butler has demonstrated ineffective assistance. *See Merrill v. State*, 716 N.E.2d 902, 906 (Ind. 1999) (holding that the defendant's trial counsel was not ineffective for failing to tender an alibi instruction because the instruction was unlikely to change the outcome of the trial where the "jury heard his alibi defense and if it had believed him, could have returned a verdict in his favor" and the "jury also heard Merrill's alibi witness deny being in the restroom with him").

## *Conclusion*

[21] For the foregoing reasons, we affirm the post-conviction court's denial of Butler's petition for post-conviction relief.

[22] Affirmed.

Baker, J., and May, J., concur.